IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                              Case Nos.:      4:92cr4013/WS/CAS
                                                 4:17cv184/WS/CAS

                                                 4:92cr4013/WS/CAS
                                                 4:98cv276/WS/CAS
PATRICIA CARLENE CLARKE,
        Defendant.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Patricia Carlene
Clarke's "Motion to Vacate Count 28 in Case No. 4:92cr4013/WS under the
Holloway Doctrine" and an addendum thereto.   (ECF Nos. 2170, 2213).
The Government has filed a response (ECF No. 2215) and Ms. Clarke filed
a reply.   (ECF No. 2219).   The case was referred to the undersigned for
the issuance of all preliminary orders and any recommendations to the
district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2;
*see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   For the reasons
stated herein, the court recommends that the § 2255 motion be denied as
successive without an evidentiary hearing.   *See* Rules Governing Section
2255 Cases 8(a) and (b).

## BACKGROUND

Defendant Patricia Carlene Clarke and sixteen others were charged in a third superseding indictment with multiple crimes.   Ms. Clarke was charged with conspiracy to commit racketeering (Count 1), racketeering (Count 2),[1] conspiracy to distribute cocaine and crack cocaine (Count 3), conspiracy to import cocaine (Count 4), and malicious damage and destruction of property used in interstate or foreign commerce by means of fire and explosives resulting in the death of law enforcement officer James Fulford (Count 28), using and carrying a destructive device during and in relation to a drug trafficking crime (Count 29).   Ms. Clarke was convicted after a lengthy jury trial.[2]

The Presentence Investigation Report ("PSR") calculated a combined adjusted offense level of 52.   (ECF No. 2232, PSR ¶ 84.)   Ms. Clarke's adjusted offense level on Counts 1 through 4 was 50, based on the quantity

---

[1]   Ms. Clarke was named in the following racketeering acts: conspiracy to distribute crack (Act One A), conspiracy to import cocaine (Act One B), money laundering (Act Five), possessing and intending to distribute crack between July 1 and August 31, 1991 (Act 19), felony murder (Act 26), witness tampering (Act 44) and money laundering (Act 49). (ECF No. 245.)

[2]   Ms. Clarke was not convicted of Count 29 (using or carrying a destructive device during and relation to a drug trafficking crime), and Racketeering Act 5 of Count 2 (money laundering) was not proven.   (ECF No. 2215 at 2, n.1).   The Government does not mention the disposition of Racketeering Act 26 (felony murder).

of drugs involved, a two-level increase for her use and possession of

firearms, and a two-level adjustment for obstruction of justice.   (ECF No.

2232, PSR ¶¶ 65-70.)   The adjusted offense level on Count 28 was 49.

(PSR ¶¶ 71-76.)   The multiple-count adjustment yielded the total offense

level of 52.   (PSR ¶¶ 77-84.)   Ms. Clarke, who was just 20 years old when

the original indictment was returned, had no criminal history.   (PSR ¶ 87.)

Even with a Criminal History Category of I, because of her total offense

level of 52, the guidelines directed a sentence of life imprisonment.[3]   The

court sentenced her to concurrent terms of life imprisonment on each

count.   (ECF No. 719 at 19-20); *see infra* at n.5 for references to the

sentencing hearing.

Ms. Clarke and numerous co-defendants appealed.   The Eleventh

Circuit rejected their attempt to avoid *Pinkerton* liability for the death of

Trooper Fulford, finding that it was a reasonably foreseeable consequence

of the drug conspiracy in which the appellants played more than a minor

role.   *United States v. Mothersill*, 87 F.3d 1214, 1220 (11th Cir. Jul. 11,

1996).

---

[3]   Even a defendant with a total offense level of 43 would have been subject to a
sentence of life imprisonment.

Case No.: 4:92cr4013/WS/CAS

<u>Ms. Clarke's First § 2255 Motion</u>

Ms. Clarke filed her first § 2255 motion in August of 1998.   (ECF No.

1243.)   The initial recommendation that the motion be dismissed as

untimely was rejected by the district court.   The then-presiding magistrate

judge entered a Second Report and Recommendation, after conducting a

merits review.   (ECF Nos. 1266, 1275, 1393.)

Relevant to the pending matters, Ms. Clarke's fifth claim for relief was

that counsel failed to discuss with her the benefits of a guilty plea and

cooperation with the Government.   (ECF No. 1393 at 4-6.)   In its

response, the Government stated "[w]hile it is true that Defendant received

a longer sentence than that of the co-defendants who entered into plea

agreements with the Government and than she probably would have

received had she also entered into a plea agreement, it is not true that she

did not know about the Government's plea and cooperation agreement and

its benefits."   (ECF No. 1299 at 5-6.)   The Government's response also

included the affidavit of the co-prosecutors Alan G. Burrow and Thomas F.

Kirwin.   (ECF Nos. 1299, Att. A & B.)[4]   Mr. Burrow stated that 14 of the 18

---

[4]   There was no affidavit from Defendant's former attorney Ronald L. Jones.
Mr. Jones, however, had been disbarred in November 30, 1994.   *The Florida Bar v.*

defendants in this case were offered a plea agreement, through which they would plead guilty to certain charges and provide complete and truthful information and testimony in exchange for a substantial assistance motion. (ECF No. 1299, Att. A, ¶ 4.)   This same plea offer was made to Ms. Clarke through her attorney, Ronald L. Jones (hereinafter attorney Jones or Mr. Jones).   *See infra* at n.5 for references to the sentencing hearing.

Mr. Burrow explained that the Government took two proffers from Defendant Clarke, one in the mid-summer of 1992, which was unsuccessful, and another during October of 1992, which he described as "successful."   (ECF No. 1299, Att. A, ¶¶ 5-6.)   Mr. Burrow sent a proposed plea agreement to attorney Jones, which he had discussed with counsel before the proffer.   (*Id.* at ¶ 6.)   It is not clear from the affidavit whether the plea agreement was discussed with Ms. Clarke herself during the two-day proffer.

Mr. Burrow stated that the Government sought a superseding indictment expanding the scope and time frame of the charged conspiracy and adding defendants largely based upon information provided during Ms.

---

*Jones*, 649 So. 2d 235 (Table); *see The Florida Bar v. Jones*, 658 So.2d 993 (Fla. Apr. 13, 1995) (Table) (disbarment approved).

Case No.: 4:92cr4013/WS/CAS

Clarke's second proffer and its belief that she would plead guilty.   (ECF

No. 1299, Att. A, ¶ 6.)   Mr. Burrow prepared for trial believing that Ms.

Clarke would enter a guilty plea and testify for the Government.   However,

shortly before trial, attorney Jones informed Mr. Burrow that

Ms. Clarke would not enter a guilty plea because she did not want to testify

against her brother Michael Morgan.   Mr. Burrow states "This was a shock

to us and caused us no small amount of inconvenience in terms of trial

preparation and strategy."   (ECF No. 1299, Att. A at ¶ 7.)

   After the Government rested its case-in-chief at trial, co-counsel Tom

Kirwin advised Mr. Burrow that attorney Jones had indicated that his client

wanted to know if the deal the Government had previously offered was still

available.   Mr. Burrow and Mr. Kirwin agreed that it was "a little too late to

do the right thing now" and communicated this to attorney Jones.   (ECF

No. 1299, Att. A, ¶ 8)

   Mr. Kirwin's affidavit largely confirms Mr. Burrow's recollection.

(ECF No. 1299, Att. B.)   Mr. Kirwin stated that several months before trial,

attorney Jones approached the prosecution suggesting that Ms. Clarke

wanted to plead guilty.   Mr. Kirwin did not attend the October proffer, but

he was aware that the prosecution team was satisfied with Ms. Clarke's

statement.   He also indicted that it was his "understanding that a plea agreement was discussed with Ms. Clarke and her attorney during this second proffer session."   (*Id.* at ¶ 7.)   However, shortly before trial, attorney Jones advised that Ms. Clarke did not want to testify against her brother Michael Morgan.   (ECF No. 1299, Att. B at ¶ 8.)   Ms. Clarke proceeded to trial, and unsuccessfully attempted to secure the same plea and cooperation offer after the Government had rested.   (ECF No. 1299, Att. B at ¶¶ 12, 13.)

In Ms. Clarke's reply, she stated that she "thought the plea agreement was no longer available as stated by counsel because the Defendant gave a Rule 11 proffer."   (ECF No. 1303 at 8.)   She further stated that counsel's statement (referring to what Mr. Burrow and Mr. Kirwin say attorney Jones stated to them) that she refused to testify against her brother was not true, and she faulted counsel for "taking the defendant to trial so that he could receive more money and advising her that the plea agreement was no longer an issue for her and that the Government thus wanted to proceed to trial."   (*Id.)*   She argued that she agreed to cooperate and "the government through her counsel withdrew the plea agreement and used all information against her in trial."   (*Id.* at 9.)

Case No.: 4:92cr4013/WS/CAS

After discussing the affidavits of Mr. Burrow and Mr. Kirwin, the

Magistrate Judge, in his Second Report and Recommendation, noted as

follows:

> This sworn evidence has not been rebutted by Defendant.
> Indeed, the essential details of the offer of a plea and
> cooperation agreement, and Defendant's last minute refusal to
> enter a guilty plea and to testify against others, was put on the
> record at sentencing and neither Defendant nor her attorney
> objected in (sic) to any of the relevant aspects of the
> Government's description of what had occurred.    Doc. 719,
> sentencing transcript, pp. 7-19.    It is tragic that Defendant
> refused to complete her initial attempts to cooperate and
> received a life sentence, but it was not due to attorney error.

(ECF No. 1393 at 7.)[5]  The recommendation did not specifically address

Ms. Clarke's claim that her attorney had lied to the Government about her

---

[5]   At sentencing, Mr. Burrow for the Government explained the nature of the potential
"plea agreement."   (ECF No. 719 at 7-9.)   "The nature of that deal was the same deal
which was offered to every – all of the cooperating witnesses in this case.   It was
offered to all of the defendants in this case with the exception of three – Paul Howell,
Patrick Howell and Michael Morgan.   They were not offered any kind of a plea bargain
whatsoever due to their association with certain homicides and acts that the
government believed just rendered them, you know, as a matter of public policy and
everything else, they just could not be offered anything.   Everybody else was offered
the same deal, which was to plea to the drug trafficking conspiracy and to a five-year
firearm count, and then to render, you know, assistance by being a truthful, cooperative
witness." (*Id*. at 8.)   The Government also stated that Ms. Clarke's attorney told them
that "she wanted a better deal; she wanted a different deal; she wanted some kind of
deal where she wasn't going to go to jail for very long, that kind of thing."   (*Id*. at 11.)
The Government declined to offer a "better" deal and Ms. Clarke proceeded to trial,
where the Government was unable to use any of the information from her proffer
against her due to Rule 11 and against other individuals due to hearsay restrictions.
(*Id*. at 11-12.)   Mr. Jones told the court he did not recall an offer for Ms. Clarke to plead

being unwilling to testify against her brother, or that she had not wanted to

refuse the plea agreement, but that this decision had been counsel's doing.

Ms. Clarke filed strenuous objections to the court's conclusion and

requested an evidentiary hearing.   (ECF No. 1426.)   In her objections she

again noted, among other things, that attorney Jones had lied to her and to

the Government about her position on the plea agreement, that attorney

Jones had withheld the fact of the plea agreement from her, neither

showing it to her nor discussing it, and that attorney Jones had directly told

her that he would make more money by going to trial, thus showing that he

was acting under a conflict of interest.   (*Id.* at 3, 7.)   Ms. Clarke

maintained that it was nonsensical to think that she had provided

incriminating information to the Government, only to refuse the

Government's plea offer two days before trial.   She claimed that attorney

Jones took advantage of her youth and lack of education and that she did

---

to a conspiracy count and a gun count, and he urged that she not be penalized for
exercising her right to go to trial.   (*Id*. at 14, 16.)   Mr. Jones reiterated that Ms. Clarke
"simply made a proffer.   In response to that proffer, the government made a plea offer.
The plea offer was not what she thought she would get.   She then decided that she
would stand on her right to go to trial."   (*Id*. at 16.)   Ms. Clarke did not speak at
sentencing other than to advise the court that she had reviewed the PSR with counsel.
(*Id*. at 2, 7, 22.)   In fact, Ms. Clarke did not offer any response to Mr. Burrow's recitation
of the potential "plea agreement."

not know the Government had sent attorney Jones a proposed plea bargain until she read the Government's response to her § 2255 motion. (*Id.*); *but see supra* at n.5.   She questioned the court's reliance on her silence at sentencing, noting that she had attempted suicide shortly thereafter.   (*Id.* at 2.)   Ms. Clarke requested an evidentiary hearing where attorney Jones would be questioned under oath to flesh out the factual matters underlying her claim.

The district court noted, without specifically addressing, Ms. Clarke's objections, and it adopted the recommendation on November 2, 2000. (ECF No. 1431.)   Ms. Clarke did not appeal the district court's decision.

Subsequent Post-Conviction Proceedings

Over the next few years, Ms. Clarke filed limited correspondence with the court.   (ECF Nos. 1490, 1562, 1608.)   In January of 2006, she filed a "Motion to Eliminate Enhancements and Reduce Sentence and Postconviction Rehabilitation Departure 5H1.1" (ECF No. 1690), which was construed as a successive § 2255 motion and denied.   (ECF Nos. 1710, 1714.)

In July of 2007, Ms. Clarke filed a pleading titled "Rule 60(b)(2) Relief from Judgement or Order."   (ECF No. 1746.)   In the motion she sought relief from the adverse judgment rendered in her first § 2255 motion. Ms. Clarke based her claim on the "newly discovered evidence" that had come to light seven years prior in the Government's 1999 response to her § 2255 motion about the plea agreement that counsel had allegedly failed to provide to her.   She notes that attorney Jones' contemporaneous claim to the Government that she did not want to testify against her brother was untrue, and she includes an affidavit from her brother Michael Morgan in support of this assertion.   (ECF No. 1746 at 4.)   Mr. Morgan avers in his May 1, 2007, affidavit that he told his sister to accept the Government's plea agreement and testify against him.   He believed that she told her attorney she was willing to do this.   Mr. Morgan opines that attorney Jones lied to financially benefit from taking the case to trial.

Ms. Clarke's Rule 60(b)(2) motion was denied as untimely or alternatively, as an unauthorized successive § 2255 motion.   (ECF Nos. 1763, 1775.)   She did not appeal.

Next, Ms. Clarke unsuccessfully moved for relief pursuant to 18 U.S.C. § 3582.   (ECF Nos. 1816, 1839.)   She appealed, and her appeal

was dismissed for failure to prosecute.    (ECF No. 1862.)    Her 2009

attempt to compel the Government to file a Rule 35 motion was also

unsuccessful.    (ECF Nos. 1872, 1874, 1880.)

In March of 2013 Ms. Clarke filed another motion pursuant to § 2255.

This motion was based on the 2012 Supreme Court rulings in *Lafler v.

Cooper*, 566 U.S. 156 (2012), *Missouri v. Frye*, 566 U.S. 134 (2012) and

*Martinez v. Ryan,* 566 U.S. 1 (2012).    (ECF No. 2062.)    Ms. Clarke again

complained of attorney Jones' alleged failure to communicate the

Government's plea offer to her, and she asked the court to allow her to

revisit the plea.    In June of 2013, this motion was also denied as

successive over Ms. Clarke's objection.    (ECF Nos. 2063, 2066, 2067.)

In August of 2013, the Eleventh Circuit denied Ms. Clarke's

application for leave to file a second or successive § 2255 motion.    (ECF

No. 2070.)    Her application was based on *Lafler* and *Frye* and her desire

to re-litigate her claim that counsel was constitutionally ineffective for

"failing to communicate a plea offer from the government, and that she was

prejudiced thereby because she consequently received a longer sentence

following trial."    (*Id.* at 2.)    The Eleventh Circuit found that the cases cited

by Ms. Clarke did not announce new rules of constitutional law that applied

Case No.: 4:92cr4013/WS/CAS

retroactively on collateral review, and further that she had not pointed to

any newly discovered evidence that, "if proven and viewed in light of the

evidence as a whole, would be sufficient to establish by clear and

convincing evidence that no reasonable factfinder would have found [her]

guilty of the offense[s]."   (*Id.* at 3, citation omitted.)   It thus denied her

application for leave to file a second or successive motion.

In January of 2015, Ms. Clarke filed a § 3582(c)(2) motion requesting

a reduction in her sentence pursuant to U.S.S.G. Amendment 782.   (ECF

No. 2098.)   The court denied the motion after a response from the

Government.   (ECF Nos. 2104, 2118.)

Current § 2255 Motion

Ms. Clarke filed her most recent § 2255 motion in April of 2017.

(ECF No. 2170.)   She now requests that the court vacate her conviction on

Count 28 pursuant to the "Holloway Doctrine."   This "doctrine" arose out of

a case in the Eastern District of New York.   *United States v. Holloway*, 68

F. Supp. 3d 310 (E.D.N.Y. 2014).   In *Holloway*, the Government agreed to

a substantial reduction in a petitioner's sentence in the interest of fairness

"even after all appeals and collateral attacks have been exhausted, and

there is neither a claim of innocence nor any defect in the conviction or sentence." *Id.* at 311.

The *Holloway* petitioner had been charged with three carjacking offenses and with using a firearm during the course of each. Under 18 U.S.C. § 924(c), the second and third firearm counts carried mandatory consecutive 20-year sentences. Holloway turned down a plea offer, following which he was convicted at trial and sentenced to more than 57 years in prison. The majority of Holloway's sentence was a result of the stacking of three 924(c) convictions, which added 45 consecutive years to the 151-month sentence he received for the carjacking convictions. After he had served twenty years of his 57-year sentence Holloway moved pursuant to Rule 60(b) to reopen his § 2255 proceeding and vacate the second and third 924(c) convictions.

On February 25, 2013, the sitting district judge, who had also sentenced Holloway, sua sponte issued an order stating "I respectfully request that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions." *Holloway*, 68 F. Supp. 3d at 314. Then-United States Attorney Loretta Lynch declined to agree to such an order, noting that

Mr. Holloway was potentially eligible for clemency relief.   Soon thereafter the Department of Justice issued a new clemency initiative which suggested Holloway would not be eligible due to his crimes of violence.

On May 14, 2014, the district judge "asked the United States Attorney to reconsider exercising her discretion to agree to an order vacating two or more of Holloway's § 924(c) convictions so he could face a more just resentencing."   *Holloway*, 68 F. Supp. 3d at 314.   Ultimately, after careful consideration, the United States Attorney agreed to the court's request. The Assistant United States Attorney, Sam Nitze, who appeared in the Government's behalf noted the defendant's extraordinary record while in the custody of the Bureau of Prisons, as well as the fact that none of the three carjacking victims opposed the request.   Mr. Nitze stated:

> we would propose to withdraw our opposition to the pending Rule 60(b) motion, and also to state on the record that we wouldn't oppose the granting of the underlying 2255 motion for the purpose of vesting the court with authority to vacate two of the 924(c) convictions and to proceed to resentence, all of that without taking a position on the merits of either the Rule 60 motion or the habeas petition.

*Holloway*, 68 F. Supp. 3d at 315.   The *Holloway* court's order noted that the outcome in the case demonstrated a difference between a "Department of Prosecutions and a Department of *Justice.*"   *Id.* at 316.   It stated that

Case No.: 4:92cr4013/WS/CAS

"[a] prosecutor who says nothing can be done about an unjust sentence because all appeals and collateral challenges have been exhausted is actually *choosing* to do nothing about the unjust sentence.   Some will make a different choice, as Ms. Lynch did here."   *Id.*   The court concluded by suggesting that inmates who ask United States Attorneys for the kind of justice made possible in the *Holloway* case receive the same careful consideration that was given to Holloway's case.

Ms. Clarke now explains in her § 2255 motion that despite having no realistic hope of being released from prison,

> She has taken the opportunity to better herself through education; she got her G.E.D went on to college and complete the Cosmetology Operator course, received her Instructor Cosmetologist License, work as a cosmetologist and a teacher, and received a Paralegal Diploma with the highest honors. Now, she is taking correspondence with International Christian College and Seminary, for her Associate Degree in Pastoral Ministry.

(ECF No. 2170 at 2.)   She also reports that she has maintained extraordinary and exemplary conduct for the last 16 years and is a model inmate.   She requests that the court vacate Count 28[6] and reduce her

---

[6]  Count 28 charged malicious damage and destruction of property used in interstate or foreign commerce by means of fire and explosives resulting in the death of a law enforcement officer.

sentence to 30 years, which would render her eligible for release from prison.   Ms. Clarke states that her sixteen years of clear conduct and her educational accomplishments show that she is not the same person who made terrible decisions over 25 years ago.   Appended to her motion and addendum are myriad certificates she has earned during her incarceration, her disciplinary record, her inmate skills development plan and several letters of reference.   (ECF No. 2270 at 23-38, 43-59, 61-63; ECF No. 2213 at 4-12.)

The undersigned entered an order directing the Government to respond to the merits of Ms. Clarke's claim.   In the order, the court also recognized that the motion may be facially untimely and/or an unauthorized successive § 2255 motion.   (ECF No. 2173.)

In its response to Ms. Clarke's motion, the Government argues that the motion should be denied "because there is no jurisdiction to, or legal basis for, vacating [Defendant's] conviction or reducing the sentences." (ECF No. 2215 at 1.)   It did not directly address the issues of fairness and justice that were key in *Holloway*, instead citing an opinion from another court in this division in a factually dissimilar case which stated that granting relief under such circumstances "would be contrary to law."   *See United*

*States v. Kenneth Daniels*, 4:99cr42/RH/CAS, ECF No. 186, (N.D. Fla.

June 21, 2017).[7]    However, the Government correctly observes that Ms.

Clarke's sentence flowed from adjusted offense levels that independently

called for a life sentence, rather than a stacking of consecutive sentences

as was the case in *Holloway*.    Additionally, the Government unequivocally

stated that it did not agree to vacatur of her conviction on any count, or to a

reduced sentence.    (ECF No. 2215 at 9.)

There are several reasons why there is no legal basis for granting

Ms. Clarke's request for relief.

First, there is no Eleventh Circuit precedent authorizing the use of the

procedures identified in *Holloway*.    *United States v. Jackson*, Case No.

8:00cr346-T-17MAP, 2018 WL 3596057 (M.D. Fla. Apr. 19, 2018); *Galvez*

*v. United States*, Case 96-00075-CR-COHN, 2017 WL 5565198 (S.D. Fla.

Jun. 16, 2017).    Nor has any other circuit court addressed the doctrine.

District courts also appear to be unanimous in their rejection of claims for

---

[7]   The *Daniels* court noted that Daniels did not turn down a plea offer that would have
resulted in a lower sentence, he was not sentenced to mandatory consecutive terms in
prison, and the United States Attorney had not agreed to vacate Daniels' single count of
conviction, although the court had not ordered the Government to file any sort of
response to Daniels' motion.

relief under *Holloway*.    *See e.g., Wright v. United States*, Cases 4:95cr39,

4:95cr44, 2018 WL 4854081 at *2 (E.D. Va. Oct. 5, 2018) (noting that

district courts had denied relief based on *Holloway* in seventy-one cases,

primarily because the Government had opposed vacatur); *United States v.*

*Zater*, Case 3:00-626-CMC, 2018 WL 4701385 (D. S.C. Oct. 1, 2018)

(finding a lack of jurisdiction because the defendant's *Holloway* claim was a

successive § 2255 motion for which authorization was required); *United*

*States v. Diaz*, Case CR 09-00294-LEK, 2018 WL 4119900 (D. Haw. Aug.

29, 2018) (finding no authority to grant a sentence reduction over

Government objection); *Howard v. United States*, Case 1:04-cr-942(FB),

2018 WL 3973005 (Aug. 20, 2018) (finding that even if the Government did

not oppose the request, the case did not present the "unique"

circumstances presented in *Holloway*) (appeal pending); *United States v.*

*Davis*, Case CR PJM 00-0424, 2017 WL 3782702 at *2 (D. Md. Aug. 31,

2017) (declining to apply *Holloway* because defendant's sentence did not

involve stacked charges); *Green v. United States*, Case 4:06cr1322-TLW-

4, 2017 WL 679644 (D. S.C. Feb. 21, 2017) (declining to apply *Holloway* in

a "standard drug prosecution" that did not present any of the issues

presented in *Holloway*); *Green v. United States*, No. 4:06-cr-01322-TLW-4,

Case No.: 4:92cr4013/WS/CAS

2017 WL 679644, at *3 (D.S.C. Feb. 12, 2017) ("Notably absent from

*Holloway* is an explanation of any statutory or constitutional basis for

vacating Holloway's convictions."); *Slade v. United States*, Nos. 4:08-CR-3-

FL, 4:13-CV-132-FL, 2016 WL 3911918, at *4 (E.D.N.C. July 15, 2016)

("*Holloway* is not binding on this court, and it involved different charges and

resentencing considerations."), *appeal dismissed*, 675 Fed.Appx. 360 (4th

Cir. 2017); *Wade v. United States*, Nos. JKB-15-3372, JKB-77-0565, 2015

WL 7732834, at *2 (D. Md. Nov. 30, 2015) ("While the *Holloway* ruling is

educational and the court is sympathetic to Wade's medical situation, it

finds no basis to apply the benefits of the *Holloway* decision, a New York

federal district court ruling, to Wade's criminal cases.").

Ms. Clarke's situation is factually distinguishable from that in

*Holloway*.   The three victims of Holloway's crimes either supported or were

not opposed to a reduction in sentence.   None of the victims died as a

result of Holloway's crimes.   Here, the charged conduct involved the death

of a law enforcement officer and there is no record evidence regarding his

family's position on a sentence reduction.

Furthermore, the sentence reduction in *Holloway* depended entirely

upon the acquiescence of the Government, which is not present here.

Case No.: 4:92cr4013/WS/CAS

*Jackson, supra*; *see also United States v. Brewer*, Case CR 696-004, 2017 WL 1407651 (S.D. Ga. Apr. 19, 2017); *United States v. Wilson*, Case 3:07cr132-J-34MCR, 2017 WL 784611 (M.D. Fla. Mar. 1, 2017); *United States v. Burton*, Case No. 1:85cr205-LJO, 2018 WL 1637955 at *2 (E.D. Ca. Apr. 5, 2018) (collecting cases).    The district court has not specifically encouraged the United States Attorney to consider a reduction as it did twice in *Holloway*.    However, the Government's opposition is alone sufficient to defeat the motion.    *Jackson*, *supra*.

Even if Ms. Clarke could show a legal or equitable basis for obtaining the specific relief she seeks, vacatur of her conviction on Count 28, this would not impact her sentence.    The PSR reflects that absent this conviction, she would have had a Criminal History Category of I and a Total Offense Level of 50.    (ECF No. 2232.)    The guidelines, which are now advisory, provide for life sentences for defendants with offense levels of 43 or greater, regardless of their Criminal History Category.[8]

---

[8]    Ms. Clarke's Presentence Investigation Report identifies her as a citizen of Jamaica. (ECF No. 2232, PSR at p. 2, and ¶ 90).    Although the issue has not been raised by the parties, it is also likely that Ms. Clarke would be subject to deportation if she were released.

Case No.: 4:92cr4013/WS/CAS

The court recognizes and commends Ms. Clarke for her achievements during her incarceration.   It also is somewhat sympathetic to the absence of direct record evidence refuting Ms. Clarke's claim that counsel hid the existence of the plea agreement from her.   If this is what happened, it provides a possible explanation for Ms. Clarke's objectively perplexing decision to proceed to trial after having provided law enforcement with incriminating evidence about herself, her brother, and other co-defendants.   However, the fact that she did not speak up at sentencing when matters concerning the plea were discussed undermines her claim.   Additionally, attorney Jones is deceased[9] and is unable to comment on Ms. Clarke's allegation, even if there were a basis to conduct a hearing some 25 years after the events in question.

In sum, at this juncture there is no statutory, constitutional, or other legal authority to grant Ms. Clarke's request for any kind of sentence reduction, particularly given the Government's opposition to such relief. As such, her successive § 2255 motion must be denied.

---

9   *See* The Florida Bar website at https://www.floridabar.org referring to Ronald Lee Jones, Sr., as deceased.

Case No.: 4:92cr4013/WS/CAS

Rule 60(b)(4) & (6) Motion

Ms. Clarke has also filed a "Motion to Set Aside, Void 28 U.S.C. Judgment thus re-opening Petitioner 2255 Motion Pursuant to Rule 60(b)(4)(6) of the Federal Rules of Civil Procedure."[10]   (ECF No. 2230.) In this motion, Ms. Clarke seeks to re-open Case 4:98cv276, the first § 2255 motion that she filed in August of 1998.   (ECF No. 1243.)   Ms. Clarke again maintains that she verbally accepted a plea to a ten-year sentence in October of 1992, but that her attorney withdrew the plea without consulting her.   (ECF No. 2230 at 5.)

Ms. Clarke cites *Missouri v. Frye*, and *Lafler v. Cooper* in support of her request.   These are the same cases she relied upon in the § 2255 motion she filed in 2013 as well as the application to file a second or successive § 2255 motion that she filed with the Eleventh Circuit the same year.   (ECF Nos. 2062, 2070.)   She claims that her motion is not successive because it does not challenge the "substance" of the court's merits resolution of her claim, but rather a defect in the integrity of the federal habeas proceedings.   (ECF No. 2230 at 2.)    It is clear from Ms.

---

[10]   The title of the motion was incorrectly noted on the electronic docket and was not corrected until December 3, 2018.   (ECF No. 2230.)

Clarke's motion, however, that she seeks to relitigate the merits of the earlier claim, based upon the "new" Supreme Court cases.   These cases were decided six years before she filed the instant motion and can hardly be deemed "new."

As with her previous Rule 60(b) motions, Ms. Clarke's motion is untimely.   The motion was not filed within a "reasonable time" from the entry of judgment, Fed.R.Civ.P. 60(c)(1), and Ms. Clarke has not offered any reason for the delay, valid or otherwise.   As such the motion should be denied.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Ms. Clarke's motions should be denied in their entirety as successive and untimely. Under the circumstances of this case, Ms. Clarke has not shown that she is entitled to relief or that an evidentiary hearing is warranted.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The "Motion to Vacate Count 28 in Case No. 4:92cr4013/WS Under the *Holloway* Doctrine" (ECF No. 2170) be **DISMISSED** as successive**.**

2.    The "Motion to Set Aside, Void 28 U.S.C. Judgment thus re-opening Petitioner 2255 Motion Pursuant to Rule 60(b)(4)(6) of

the Federal Rules of Civil Procedure" (ECF No. 2230) be

**DENIED**.

3.     A certificate of appealability be **DENIED**.


At Tallahassee, Florida, this 10th day of December, 2018.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.    A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.